**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN P. MATHEWS | : | CIVIL ACTION |
| | : | |
| v. | : | 05-100 |
| | : | |
| WASHINGTON MUTUAL BANK, FA | : | |

**JOYNER, J.**                                                    **August 14, 2006**

<u>**MEMORANDUM AND ORDER**</u>

Via the motion now pending before this Court, Defendant, Washington Mutual Bank, FA ("Defendant" or "Washington Mutual"), seeks summary judgment on all of Plaintiff's claims.  For the reasons outlined below, this motion shall be granted in part and denied in part.

**I.   Background**

Plaintiff, John P. Matthews ("Plaintiff"), initiated this suit, pro se, to recover for alleged violations of his civil rights and various federal and state laws.  On October 1, 1997, Defendant was assigned a mortgage loan in the amount of $277,000.00 in Plaintiff's name secured by the property located at 708 Woodland Avenue, East Norristown, PA 19401 (the "Property").  (Def.'s Mot. for Summary Judgment ("Def.'s Mot.") Ex. A, Aff. of Phelan, Hallinan & Schmeig, LLP ("Phelan Aff.") ¶ 1.)  Plaintiff failed to make his loan payments for August, September, October, and November of 1998.  (Def.'s Mot. Ex. B, Pl.'s Resp. to Admis. Req. ("Pl.'s Admis.") ¶ 14.)  In response,

Washington Mutual filed a mortgage foreclosure action (the

"Foreclosure Action") on November 25, 1998.[1]  (Id.)  Plaintiff

has, since that date, filed five separate bankruptcy petitions.[2]

---

[1]The Foreclosure Action is captioned <u>Washington Mutual v.
John P. Matthews</u>, Montgomery County Court of Common Pleas No. 98-
21261.

[2]The Bankruptcy Dockets for the Bankruptcy Court for the
Eastern District of Pennsylvania show the activity in Plaintiff's
five bankruptcy cases: (a) <u>In re John P. Matthews</u>, No. 99-10688
("First Bankruptcy"), filed January 19, 1999; (b) <u>In re John P.
Matthews</u>, No. 00-18872 ("Second Bankruptcy"), filed July 14,
2000; (c) <u>In re John P. Matthews</u>, No. 03-38172 ("Third
Bankruptcy"), filed December 12, 2003; (d) <u>In re John P.
Matthews</u>, No. 04-14042 ("Fourth Bankruptcy"), filed March 23,
2004; (e) <u>In re John P. Matthews</u>, No. 04-16546 ("Fifth
Bankruptcy"), filed May 7, 2004
     Plaintiff argues that the Third and Fourth Bankruptcies
should not be treated as two separate filings, because "the law
forbids 3 chapter seven bankruptcies filing in one year." [sic]
(Pl.'s Resp. to Def.'s Mot. ("Pl's Resp.") at 4.)  Plaintiff
asserts that the petition from the Third Bankruptcy was "refiled
due to court error." (Id.)  Plaintiff offers no explanation of
what "court error" occurred that might have led to duplicate
filings.  The petitions in the Third and Fourth Bankruptcies were
signed by Plaintiff and his counsel on December 10, 2003 and
March 23, 2004 respectively, thus belying Plaintiff's assertion
that clerical error led to the court filing the same petition
twice.
     While bankruptcy law provides for the dismissal of a
bankruptcy petition of a debtor who had another bankruptcy case
pending at any time in the preceding 180 days, such dismissal
generally occurs upon a motion, and requires an evidentiary
determination by the bankruptcy court that the earlier case was
dismissed for wilful failure to comply with court orders.  <u>See</u> 11
U.S.C. § 109(g)(1); 2-109 Alan N. Resnick & Henry J. Sommer,
<u>Collier on Bankruptcy</u> 109.08 (15th ed. 2005)  There is no
indication that any of Plaintiff's bankruptcies were dismissed
pursuant to § 109(g)(1), and no authority supporting the idea
that where a bankruptcy petition could have been dismissed under
§ 109(g) it should not be treated as a bankruptcy filing even
where it was not actually dismissed.  Thus, we will not pretend
that Plaintiff did not file the Third, Fourth, or Fifth
Bankruptcies merely because there is some possibility that a
motion to dismiss under § 109(g) might have been appropriately
made by Defendant.

(Id. ¶¶ 15, 31, 46, 50; see also Def.'s Mot. Ex. C, Docket Entries of the U.S. Bankruptcy Court for the Eastern District of Pennsylvania ("Bankruptcy Dockets").)  Plaintiff was represented by counsel in all of the relevant bankruptcy proceedings.  (See Bankruptcy Dockets.)  Plaintiff's first four bankruptcies were dismissed for failure to make court ordered payments and filings. (See Bankruptcy Dockets.)

Defendant was granted a default judgment in the Foreclosure Action, but its attempts to execute judgment were blocked by Plaintiff's first four bankruptcy filings.  (Pl.'s Admis. ¶¶ 17, 53.)  As part of the Fifth Bankruptcy, Plaintiff signed a Stipulation and Order in Settlement of Motion for Relief from the Automatic Stay, promising to make two payments of $2,514.97.[3] (See Def.'s Mot. Ex. E, Stipulation and Order in Settlement of Motion for Relief from the Automatic Stay ("Stipulation").)  When Plaintiff failed to make the payments pursuant to the Stipulation,[4] Defendant issued a Praecipe for Writ of Execution,

---

[3]The Stipulation also provided that Defendant would be relieved from the automatic stay, but would not oppose any Chapter 13 filing submitted prior to December 1, 2004.  (See Stipulation.)

[4]In an Order dated September 9, 2004, the Bankruptcy court discharged Plaintiff's Fifth Bankruptcy as per the Stipulation. (See Bankruptcy Dockets.)  On December 9, 2004, Defendant filed a motion to reopen Plaintiff's Fifth Bankruptcy and enter a default on the Stipulation because Plaintiff failed to make the stipulated payments.  (See id.)  The Bankruptcy Court held a hearing on that motion on December 21, 2004.  (Id.)  In an Order dated December 23, 2004, the Bankruptcy court certified

which resulted in the issuance of a Writ of Execution on November 5, 2004 in the Foreclosure Action.  (Phelan Aff. ¶¶ 9-12.)

Defendant filed an affidavit of service averring that the notice of a sheriff's sale scheduled for December 29, 2004 was personally delivered to Plaintiff at the Property on November 6, 2004 ("First Sale Affidavit").  (Phelan Aff. ¶ 14; see also Def.'s Mot. Ex. G, Pl.'s Mots. for Relief from Judgment ("Pl.'s Mots. for Relief") at Debtor's Doc. A.)  Plaintiff filed a Motion to Open and Set Aside Judgment and a subsequent Motion to Stay Sheriff's Sale Pending Disposition of the Motion to Open and Set Aside Judgment ("Plaintiff's Motions for Relief") seeking relief from judgment and suspension of the planned sheriff's sale.  (See Pl.'s Mots. for Relief.)  Plaintiff's Motions for Relief assert that an earlier praecipe for writ of execution and resulting writ were invalid, and that the First Sale Affidavit was false.[5]  (See Pl.'s Mots. for Relief; Pl.'s Admis. ¶¶ 68, 79.)

On December 23, 2004, Defendant cancelled or postponed the sheriff's sale noticed scheduled for December 29, and issued a new notice for a sheriff's sale scheduled January 26, 2005

---

Plaintiff's default of the Stipulation and required leave of court for any future bankruptcy filings.  (Id.; see also Def.'s Mot. Ex. F, Order of Dec. 23, 2004.)

[5]The praecipe and writ challenged in Plaintiff's motions were issued on June 1, 2000 ("June 1, 2000 Writ").  (Def.'s Mot. Ex. D, Docket Entries for Washington Mutual v. John P. Matthews, Montgomery County Court of Common Pleas No. 98-21261 ("Common Pleas Docket").)  The June 1, 2000 Writ was stayed on November 13, 2000 by virtue of payments made through the concurrent bankruptcy proceedings.  (Id.)

("Second Sale Notice").  (Phelan Aff. ¶¶ 21-24, Pl.'s Admis. ¶¶ 72-73.)  The Second Sale Notice was served on December 26, 2004 by delivery to Joyce Matthews, Plaintiff's wife, at the Property. (Def.'s Mot. Ex. H, Aff. of Service of Second Notice of Sheriff's Sale; Phelan Aff. ¶¶ 21-24.)  Plaintiff has not challenged the validity or service of the Second Sale Notice.  (Phelan Aff. ¶ 33.)

On February 15, 2005, a hearing was held in the Montgomery County Court of Common Pleas on Plaintiff's Motions for Relief. (Pl.'s Admis. ¶ 80.)  Plaintiff had notice of the hearing, attending the hearing with his attorney, and had the opportunity to be heard and present evidence.  (Id. ¶ 81.)  After the hearing, the court issued an Order denying Plaintiff's Motions for Relief.  (Def.'s Mot. Ex. I, Order of the Montgomery County Court of Common Pleas of Feb. 15, 2005.)  The Property was sold by the sheriff on February 23, 2005.  (See Common Pleas Docket.)

## II.  Legal Standard for Summary Judgment

In deciding a motion for summary judgment under Fed. R. Civ. P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law."  Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (internal citation omitted).  Rule 56(c) provides that summary judgment is properly rendered:

> . . . if the pleadings, depositions, answers to
> interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine
issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.

Thus, summary judgment is appropriate only when it is
demonstrated that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a
matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-32
(1986).  An issue of material fact is said to be genuine "if the
evidence is such that a reasonable jury could return a verdict
for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).

A party seeking summary judgment bears the initial burden of
identifying portions of the record that demonstrate the absence
of issues of material fact.  Celotex, 477 U.S. at 323.  The party
opposing a motion for summary judgment cannot rely upon the
allegations of the pleadings, but instead must set forth specific
facts showing the existence of a genuine issue for trial.  Id. at
324; Fed. R. Civ. P. 56(e).

Where the plaintiff is a pro se litigant, the Court is
obliged to construe pleadings liberally in the plaintiff's favor.
See Haines v. Kerner, 404 U.S. 519, 520-521, 30 L. Ed. 2d 652, 92
S. Ct. 594 (1972).  This "judicial grace does not[, however,]
relieve the pro se plaintiff of the burden of coming forth with
some evidence" to avoid summary judgment.  Lewis v. Kinko's, Civ.
A. No. 99-3028, 2004 U.S. Dist. LEXIS 6242, *17 (E.D. Pa. Mar.
31, 2004) (quoting Kershaw v. Aspin, Civ. A. No. 94-216, 1994

U.S. Dist. LEXIS 17092, *2 (E.D. Pa. Dec. 5, 1994)).

## III. Discussion

Plaintiff filed the instant suit on January 10, 2005.  The Complaint alleges that Defendant deprived and/or conspired to deprive Plaintiff of the protections of the bankruptcy laws, specifically 11 U.S.C. §362(a) and 1332(c)(2), by wrongfully seeking excessive payments and relief from the automatic stay. Plaintiff also claims that the alleged invalidity of the June 1, 2000 Writ and First Sale Affidavit constitute violations of 18 U.S.C. §§ 4 and 1341 and 18 Pa. C.S.A. § 4904.  Plaintiff further alleges that Defendant illegally deprived him of his civil rights in violation of 42 U.S.C. §§ 1983 and 1985.  The Complaint also appears to allege violations of 2 U.C.C. § 508, 2 U.S.C. 311(3)(B), "Plaintiff's right of due process at law pursuant to United Ancient bill of rights Article V," Pennsylvania Rule of Civil Procedure 2958.1, Amendments V and XIV of the United States Constitution, and Article III, § 32 of the Constitution of the Commonwealth of Pennsylvania.

### A.    Criminal Allegations

Many of Plaintiff's claims seek relief for alleged violations of federal and state criminal statutes.  While the fact that a criminal penalty is created does not preclude a private right to bring a civil action, a "bare criminal statute" is generally insufficient to support such a right.  See Cort v. Ash, 422 U.S. 66, 79 (1975).  Where a statute does not expressly

provide for a civil right of action, four considerations are relevant to a court's determination of such a right is implied: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted," (2) whether there is an indication of legislative intent to create or deny a private remedy, (3) whether the availability of a private remedy is consistent with the underlying purpose of the statute, and (4) whether the cause of action is one traditionally left to state law. Id. at 78. The first two questions are key to the determination — the second two considerations cannot, alone, support a private right of action. Three Rivers Ctr. for Indep. Living, Inc. v. Hous. Auth., 382 F.3d 412, 421 (3d Cir. 2004) (citing AT&T v. M/V Cape Fear, 967 F.2d 864, 866 (3d Cir. 1992)). Thus, "for an implied right of action to exist, a statute must manifest Congress' intent to create (1) a personal right, and (2) a private remedy." Id. (citing Alexander v. Sandoval, 532 U.S. 275, 286 (2001)).

The determination of whether § 1983 provides a private right of action to enforce a statute overlaps with the Cort analysis. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284 (2002). Because § 1983 itself furnishes a private remedy, the first prong of the analysis described in Cort and Sandoval – whether the statute in question was intended to create a personal right to the plaintiff's benefit – becomes the threshold issue. Three Rivers, 382 F.3d at 421-22, 422 n.11 (citing Gonzaga, 536 U.S. at 284).

To establish that § 1983 may be employed to recover for violations of a statute, a plaintiff must show that the statute creates an enforceable right, privilege, or immunity within the meaning of § 1983.  Id. (citations omitted).  Once a plaintiff demonstrates that the statute creates a federal right to his benefit, a rebuttable presumption arises that such right is enforceable through § 1983.  Id.  This presumption can be rebutted by a showing that Congress "specifically foreclosed" the use of § 1983 as a remedy either through express prohibition in the statutory text or by creation of a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.  Id. (citing Powell v. Ridge, 189 F.3d 387, 401 (3d Cir. 1999)); see also Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1 (1981).

Defendant argues that Plaintiff has presented nothing to show that any private right of action is available under the referenced statutes or via § 1983.  If no private right of action is available through the statutes or § 1983, Plaintiff has no standing to seek recovery for any violations of the cited statutes.  Plaintiff does not respond directly to these arguments, but instead repeats the facts asserted in the Complaint and adds new allegations that Defendant violated 12 U.S.C. § 1831n(2)(A) and 15 U.S.C. § 1611.[6]  We examine whether

---

[6]Plaintiff purports to add additional "violations" in his response to Defendant's motion.  These claimed violations were not part of the Complaint, and such claims are, therefore, not

any of the criminal statutes on which Plaintiff's action relies

creates a private right of action.

### 1.   18 U.S.C. § 4

Plaintiff alleges that Defendant violated 18 U.S.C., § 4.

(Pl.'s Compl. at 3.)   This section provides a criminal penalty

for misprison of a felony.   Specifically, § 4 provides

> Whoever, having knowledge of the actual commission of a
> felony cognizable by a court of the United States,
> conceals and does not as soon as possible make known
> the same to some judge or other person in civil or
> military authority under the United States, shall be
> fined under this title or imprisoned not more than
> three years, or both.

---

properly before us.  Even if such allegations had been made in
the Complaint, these statutes would not provide Plaintiff any
right or remedy.
    Plaintiff alleges that Defendant's accounting practices
violated 12 U.S.C. § 1831n(2)(A), which requires that certain
filings with federal agencies by banking institutions be made in
accordance with the Generally Accepted Accounting Procedures
("GAAP") set forth elsewhere in that section.  We find no
indication in the text, context, or history of § 1831 that it was
intended to create a private right of action.  It is also unclear
whether this provision would even apply, given that the
challenged submissions here were made to federal and state
courts, not federal agencies overseeing the banking industry.
    Plaintiff also alleges that Defendant did not correct
accounting errors in state court, in violation of 15 U.S.C. §
1611.  While a private cause of action is available for
violations of certain portions of the consumer credit cost
disclosure provisions under Chapter 41, these provisions address
only the disclosures required to be made to debtors and potential
debtors.  See 15 U.S.C. § 1640 (creating a cause of action for
violations of 15 U.S.C. § 1631 et seq.); 15 U.S.C. § 1601
(stating that the purpose of Title 15 is to ensure that consumers
can compare available credit terms and protect consumers against
unfair credit practices); 15 U.S.C. § 1631 (providing that
covered creditors must disclose certain information "to the
person who is obligated" under a credit agreement).  These
provisions are silent as to the obligations of a creditor to
correct submissions to a court.  Thus, § 1611 does not appear to
create any private right of action.

18 U.S.C. § 4.  No right of civil action is created by the plain language of this provision.  See, e.g., Mowish v. Gentry, Nos. 97-5331, 97-5417, 1998 U.S. App. LEXIS 17922, *5 (6th Cir. July 31, 1998).  We can find no court that has concluded that this statute creates any personal right or private remedy.  See id.; King v. Keller, Civ. A. No. 06-4001, 2006 U.S. Dist. LEXIS 35791, 17-19 (D. Kan. May 30, 2006)) (finding that because § 4 is a "bare criminal statute," no private right of action arises); Tucker v. Bank One N.A., 265 F. Supp. 2d 923, 925 (N.D. Ill. 2003) (same); United States ex rel. Farmer v. Kaufman, 750 F. Supp. 106, 108 (S.D.N.Y. 1990) (finding that courts have declined to imply a private right of action in § 4) (citing Dugar v. Coughlin, 613 F. Supp. 849, 852 n.1 (S.D.N.Y. 1985)).

    Courts have consistently found that nothing in or surrounding § 4 creates any right to the benefit of an individual plaintiff in a civil suit.  See, e.g., Dugar at 852 n.1 (concluding that § 4 did not "secure rights to plaintiff," who could therefore "neither sue directly under [it], nor can he use [it] as a predicate for a section 1983 action") (citations omitted).  We agree with these courts that nothing in the text, history, or application of § 4 suggests that it creates any right to the benefit of an individual civil plaintiff.  Rather, it is a "bare criminal statute" not intended to protect any specific group or create any personal rights.  In the absence of such a personal right, § 4 creates neither its own implicit right of

action nor any right of action through § 1983.  See Three Rivers, 382 F.3d at 421-22 (citations omitted).  Thus, Plaintiff, as a matter of law, cannot proceed with a civil action to recover for a violation § 4.

### 2.   18 U.S.C. § 1341

Plaintiff alleges that Defendant violated 18 U.S.C. § 1341 by entering into a "secondary contractual agreement" for repayment of the original debt that required payments that Plaintiff was unable to make.  (Pl.'s Compl. at 2.)  This provision sets forth the criminal prohibition on defrauding or swindling another by use of the United States Mail.  See 18 U.S.C. § 1341.  A majority of courts have concluded that § 1341 does not, by itself, provide a private right of action.  Kathrein v. McGrath, 166 Fed. Appx. 858, 863 (7th Cir. 2006) (joining Fifth, Sixth, and Eight Circuits in finding no private cause of action for mail fraud) (citations omitted); Jefferson v. United States, 73 Fed. Appx. 262, 263 (9th Cir. 2003) (finding that § 1341 provides no private right of action; Barrett v. City of Allentown, 152 F.R.D. 46, 50 (E.D. Pa. 1993) (same) (citing Ryan v. Ohio Edison Co., 611 F.2d 1170 (6th Cir. 1979); Krupnick v. Union Nat'l Bank, 470 F. Supp. 1037, 1038 (W.D. Pa. 1979)). Those few courts that have found a private right of action arising from § 1341 have relied upon the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1861 et seq. ("RICO"), not § 1341 itself, to provide the basis for a private civil action.

See, e.g., Ayres v. GMC, 234 F.3d 514, 519 (11th Cir. 2000)
(noting that § 1341 may be enforced through a private RICO
action).

We agree that § 1341, taken alone, is no less of a "bare
criminal statute" than § 4.  While RICO provides a private right
to enforce § 1341, there is no indication that there is any
similar right of enforcement where no RICO claim is or can be
made.  The availability of enforcement through RICO also suggests
that allowing a plaintiff to use § 1983 to seek recovery for
violations of § 1341 would be inappropriate, as RICO appears to
create a comprehensive remedial scheme for those violations that
Congress has determined give rise to private civil recovery.  See
Three Rivers, 382 F.3d at 421-22; see also United States v.
Philip Morris USA, Inc., 396 F.3d 1190, (D.C. Cir. 2005) (finding
that RICO creates a comprehensive remedial scheme that limits the
ability of courts to fashion additional remedies).  Thus, RICO
appears to provide the exclusive civil remedy for violations of
§ 1341.  Plaintiff does not purport to bring this suit under
RICO.[7]  Thus, Plaintiff cannot properly seek recovery directly

_____

[7]To advance a civil claim under RICO, a plaintiff must
allege "(1) conduct (2) of an enterprise (3) through a pattern
(4) of racketeering activity."  Lum v. Bank of Am., 361 F.3d 217,
223 (3d Cir. 2004) (citing Sedima, S.P.R.L. v. Imrex Co., Inc.,
473 U.S. 479 (1985)).  A "pattern of racketeering activity"
requires at least two "predicate acts," such as mail or wire
fraud. Id.; 18 U.S.C. § 1961(1),(5).  Where a RICO plaintiff
relies on mail or wire fraud as a predicate act, the allegations
of fraud must be pled with specificity as per Federal Rule of
Civil Procedure 9(b).  Id.  Plaintiff's § 1341 allegations relate

through § 1341 or through § 1983.

### 3.   18 Pa. C.S. § 4904

Plaintiff alleges that Defendants, by filing the First Sale Affidavit, violated 18 Pa. C.S. § 4904 because the affidavit was false.  (Pl.'s Compl. at 4.)  This section provides a state criminal penalty for unsworn falsification to authorities as follows:

> (a) IN GENERAL. -- A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:
>
> (1) makes any written false statement which he does not believe to be true;
>
> (2) submits or invites reliance on any writing which he knows to be forged, altered or otherwise lacking in authenticity; or
>
> (3) submits or invites reliance on any sample, specimen, map, boundary mark, or other object which he knows to be false.
>
> (b) STATEMENTS "UNDER PENALTY." -- A person commits a misdemeanor of the third degree if he makes a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.
>
> (c) PERJURY PROVISIONS APPLICABLE. -- Section 4902(c) through (f) of this title (relating to perjury) applies to this section.

18 Pa. C.S. § 4904.  We have found no cases in which any court

_____

to only one act, and provide no specificity as to whether the United States Mails were ever involved, much less as to any fraudulent scheme.  Instead, Plaintiff alleges that the terms of the agreement were in violation of the bankruptcy laws – an allegation that is addressed below.  Thus, even reading Plaintiff's Complaint liberally, he sets forth no RICO claim.

has considered whether this statute conveyed a private right of action.  Nothing in the text of the statute suggests that it creates any right to the benefit of an individual.  Rather, the text and headings appear to explicitly create this penalty to the benefit of the authorities carrying out public administration.  The Article under which this section appears is entitled "Offenses Against Public Administration," and the title of the section supports that this particular act is criminal because the unsworn falsifications are being made to authorities.  Absent some suggestion that a private right accrues, this otherwise "bare criminal statute" cannot give rise to a private civil action.[8]  Thus, Plaintiff cannot pursue recovery for alleged violations of § 4904.

**B.   Bankruptcy Statutes**

Plaintiff alleges that Defendant violated the provisions of the Bankruptcy Code.  As with the criminal statutes above, Defendant argues that no private right of action is created by the statutes themselves or through § 1983.

**1.   11 U.S.C. §362**

Plaintiff alleges that Defendant violated the automatic stay by proceeding with the Foreclosure Action even after Plaintiff filed the First Bankruptcy.  (Pl.'s Compl. at 3-4.)  Defendant

---

[8]Because § 1983 provides recovery only for violations of federal — not state — rights, § 1983 cannot be used to recovery for a violation of § 4904.  See 42 U.S.C. § 1983.

argues that § 362, which provides for the automatic stay in bankruptcy, creates no private right of action.  (Def.'s Mot. at 8-10.)  Defendant, however, is only partly correct.

A debtor can, by bringing a private civil suit, seek recovery for willful violations of the automatic stay.[9]  See 11 U.S.C. § 362(h)[10] (2004); see also Joubert v. ABN Mortg. Group, Inc. (In re Joubert), 411 F.3d 452, 456 (3d Cir. 2005) (citations omitted); In re Meyers, No. 05-18208, 2006 Bankr. LEXIS 537, 6-7 (Bankr. D. Pa. April 6, 2006) (contrasting § 362(h)'s explicit private remedy with the silence of § 524); Hubbard v. National Bond & Collection Assoc., Inc., 126 B.R. 422, 429 (D. Del. 1991) (noting that § 362(h) provides for a private right of action for willful violations of an automatic stay).  Thus, a private right of action is available to seek damages for injury caused by willful violations of the automatic stay.  Defendant's motion does not argue that Plaintiff has failed to identify any genuine issue of material fact as to whether recovery under § 362(h) is

---

[9]The automatic stay is also enforceable through the contempt power of the bankruptcy court.  That power does not, however, extend to a district court considering a separate civil action brought under § 362(h).

[10]The 2005 Amendments to the Bankruptcy Code redesignated subsection (h) as subsection (k), and made additions to the text. Those amendments were enacted on April 20, 2005, to be effective 180 days after that date, and specified that they were not applicable to cases filed before the effective date.  This case was filed January 10, 2005, thus placing it even before the enactment date and making the amendments inapplicable.  Because the amendments do not apply, we reference the relevant provision by its former designation, § 362(h).

available to Plaintiff in this case.  Thus, summary judgment on
Plaintiff's claim, in so far as it seeks relief for violations of
the automatic stay, is not appropriate at this time.

Whether a violation of § 362 may be enforced through § 1983
presents a different inquiry.  While § 362, by providing a
private right of action to enforce the automatic stay, appears to
create federal right to Plaintiff's benefit, we must still
examine whether the remedy of § 1983 has been either explicitly
or implicitly foreclosed.  See Three Rivers, 382 F.3d at 421-22.
The Third Circuit has not addressed the question of whether a
debtor or former debtor can use § 1983 to recover for violations
of § 362.  At least one court has found that § 1983 provides a
cause of action to recover for violations of the Bankruptcy Code.
See, e.g., Gibbs v. Hous. Auth. of New Haven, 76 B.R. 257, 261
(D. Conn. 1983).  Gibbs, however, was decided before the Supreme
Court's decisions declining to find a § 1983 cause of action
where Congress had implicitly foreclosed such a remedy by
creating a comprehensive remedial scheme.  Sea Clammers, 453 U.S.
1 (finding that Congress foreclosed a § 1983 remedy under Federal
Water Pollution Control Act as evidenced by the Act's
comprehensive remedial scheme).  By providing a remedy for
damages, as well as giving contempt powers to the bankruptcy
courts, Congress has created a comprehensive system by which
debtors may enforce the automatic stay.  See 11 U.S.C. § 362(h).
We agree with the Bankruptcy Court of this district that Congress

has provided just the type of comprehensive remedial scheme
contemplated by <u>Sea Clammers</u>.  Thus, [r]esort to §[] 1983 []
would circumvent that express statutory scheme." <u>Lesniewski v.</u>
<u>Kamin</u> (<u>In re Lesniewski</u>), 246 B.R. 202, 213 (Bankr. D. Pa. 2000).
Plaintiff cannot, therefore, pursue a § 1983 action to recover
for any alleged violations of the automatic stay.

### 2.   11 U.S.C. § 1322(c)(2)

In addition to claiming a violation of the automatic stay,
Plaintiff alleges that Defendant violated 11 U.S.C. § 1322(c)(2).
This section addresses the proper contents of a Chapter 13 plan.
<u>See generally</u> 11 U.S.C. § 1322.  Specifically, § 1322(c)(2)
provides that

> . . . in a case in which the last payment on the
> original payment schedule for a claim secured only by a
> security interest in real property that is the debtor's
> principal residence is due before the date on which the
> final payment under the plan is due, the plan may
> provide for the payment of the claim as modified
> pursuant to section 1325(a)(5) of this title [11 USCS §
> 1325(a)(5)].

11 U.S.C. § 1322(c)(2).  Unlike § 362, nothing in this subsection
or the other portions of § 1332 explicitly creates a private
right of action.  <u>See</u> 11 U.S.C. § 1322; <u>see also</u> <u>Smith v. Keycorp</u>
<u>Mortg., Inc.</u>, 151 B.R. 870, 876 (N.D. Ill. 1993).  <u>Smith</u> applied
the <u>Cort</u> factors to § 1322, and concluded that no private right
of action was available.  <u>Id.</u>

While a debtor seeking the protections of bankruptcy is
certainly among those Congress intended the Bankruptcy Code to
benefit, our inquiry does not end there.  <u>Smith</u>, 151 B.R. at 876.

The comprehensive remedial system provided by the Bankruptcy Code, and the fact that Congress explicitly created certain private rights of action through other sections of the Code, suggest that if Congress intended to create a private right of action, it would have done so expressly.  Id.  The Code gives the bankruptcy courts the power to evaluate Chapter 13 plans and their impact on debtors, and further provides that a district court may issue such orders as are necessary to carry out the provisions of the Code.  See 11 U.S.C. § 105(a).  Where a plaintiff brings a civil action separate from the bankruptcy or appeal thereof, however, he does not seek such action from the bankruptcy court, but instead asks that the district court punish a creditor for alleged violation of the bankruptcy code.  The Third Circuit has found that § 105(a), while it affords additional powers to a district court sitting in bankruptcy, "does not authorize separate lawsuits as a remedy for bankruptcy violations."  In re Joubert, 411 F.3d at 455-56 (citations omitted).  Thus, the district court cannot, through a private civil action, consider claims based on violations of § 1322.  We further find that, as with § 362, allowing a § 1983 action for violations of § 1322 would improperly circumvent the existing remedial scheme of the Bankruptcy Code.[11]  See supra Part III.B.1.

_____

[11]Although § 1322, unlike § 362, does not provide any private right of action, adequate opportunity exists for a debtor to enforce his rights through the bankruptcy proceedings and, if necessary, appeal.  It is not clear the extent to which Plaintiff, while before the bankruptcy court, sought to modify

###   C.    Pennsylvania Rule of Civil Procedure 2958.1

Plaintiff alleges that Defendant violated Pennsylvania Rule of Civil Procedure 2958.1.  Chapter 2950, under which Rule 2958.1 appears, sets forth the mechanisms for obtaining and enforcing a confessed judgment for money.  See Pa. R.C.P. Nos. 2950 et seq. Rule 2958.1 addresses the manner of execution on a confessed judgment.  There is no evidence that the complaint filed by Defendant in the Foreclosure Action was based on a confession of judgment.  Rather, it appears that a complaint was filed with no confession of judgment, but Plaintiff failed to answer, resulting in default.[12]  Default and a confessed judgment are not equivalent, and not subject to the same procedural rules.[13]  Thus, it would appear that the notice requirements of 2958 (and, indeed, Chapter 2950 as a whole) are inapplicable.[14]

---

any Chapter 13 plan pursuant to § 1322.  Plaintiff did not appeal any of the five bankruptcies.

[12]Whether or not the praecipe requesting entry of default is a violation of the automatic stay is a separate question.

[13]While the execution of confessed judgments to collect monies under a residential mortgage is subject to the notice requirements of Rule 2958.1, the notice requirements for such judgments not based on a confession of judgment are provided by Rule 3101 et seq.

[14]Plaintiff cites 2958.1 as providing for "Substitution, reissuance and expiration of writ."  This provision, however contains no such language or title.  Rule 3106, which applies to non-confessed judgments for money, bears this exact title.  Even if Rule 3106 is applicable, it no more creates a private right of action than any other rule, and therefore cannot be the basis for Plaintiff's suit.

Even if we could determine that Rule 2958.1 applied, Plaintiff cannot recover for violations of the rule unless it creates a private right of action.  Nothing in Rule 2958.1 or any other section of the Pennsylvania Rules of Civil Procedure suggests that any substantive right accrues to any individual or group under the rules.  Furthermore, the rules may not "abridge, enlarge []or modify the substantive rights of any litigant. . . ."  42 Pa. C.S. § 1722(a).  Thus, it is clear that the legislature did not intend for any substantive right, express or implied, to be created by the Pennsylvania Rules of Civil Procedure, and Plaintiff cannot recover for a violation of the rules through a private civil suit based on either of these rules.[15]

### D.   § 1983

#### 1.   State Rights

To the extent Plaintiff seeks to employ § 1983 to recover for alleged violations of state law or procedure, summary judgment is appropriate because § 1983 provides a remedy only for violation of a right protected by federal constitutional or statutory provisions.  See 42 U.S.C. § 1983.  Violations of state law cannot, alone, provide a federal right that may be vindicated through § 1983.

---

[15]§1983 provides no remedy for violations of state law.  See supra n.8.

### 2.   Due Process

Plaintiff's § 1983 claim appears to allege that, by violation the provisions of the Bankruptcy Code, various criminal statutes, and state procedure, Defendant deprived Plaintiff of his right to due process of law.  As discussed above, the bulk of these statutes provide no right of recovery in themselves or through § 1983.  We are left with the question of whether Defendant's alleged actions violated Plaintiff's right to due process of law.

### a.   Statute of limitations

Defendant asserts that Plaintiff can only pursue a § 1983 claim for events that occurred on or after January 10, 2003 because the statute of limitations bars recovery on all other alleged actions.  The statute of limitations for a § 1983 claim is determined by the state law statute of limitations for personal injury torts which, in Pennsylvania, is two years.  Rose v. Bartle, 871 F.3d 331, 347 (3d Cir. 1989) (citations omitted). Under federal law, a § 1983 claim accrues, and the statute of limitations begins to run, when the plaintiff knew or had reason to know of the injury that forms the basis of the action.  Id. at 347-48.

The wrongful acts alleged by Plaintiff date back to February 1999, when Plaintiff alleges Defendant violated the automatic stay.  There is nothing to suggest that Plaintiff was unaware of

any of the alleged wrongs – on the contrary, he repeatedly sought to advance many of the same allegations in bankruptcy court and in the Foreclosure Action.  Nor has Plaintiff argued or shown that the alleged acts were part of a continuing series of affirmative acts that might warrant the application of the continuing violation doctrine.[16]  Thus, Plaintiff's § 1983 claim is time-barred to the extent that it seeks to recover for alleged wrongs committed before January 10, 2003.

### b.   State action

---

[16]The continuing violation doctrine provides an "'equitable exception to the timely filing requirement.'"  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (quoting West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)).  This doctrine may be applicable where the alleged conduct is part of a "continuing practice" and the last act evidencing that pattern falls within the statute of limitations.  Id. (citing Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).  A continuing practice requires continuing affirmative, illegal acts, not merely continuing ill effects of an original violation.  Id.  In determining whether the continuing violation doctrine applies, courts must consider (1) whether the alleged violations constitute the same type of illegal conduct; (2) whether the alleged acts recurred or were merely isolated incidents; and (3) whether the act had a degree of permanence such that the plaintiff should have been aware of his rights and the duty to assert them.  Id. (citing West, 45 F.3d at 755 n.9).

With regards to the acts alleged to have occurred prior to January 10, 2003, Plaintiff alleges that Defendant violated the automatic stay, demanded excessive payments, used poor accounting practices, and obtained an invalid praecipe and writ.  Even if we assume that there is some consistent subject matter among these acts, these acts did not affirmatively continue or recur on a regular basis, and that they may have caused continuing ill effects is insufficient to transform them into a continuing practice.  Thus, Plaintiff could not successfully show that the pre-January 10, 2003 allegations should be deemed timely under the continuing violations doctrine.

The allegations remaining before us are that the praecipe and writ obtained on November 5, 2004 were invalid, that the First Sale Affidavit was false, and that Plaintiff was wrongfully forced to enter into the Stipulation in the Fifth Bankruptcy.  A § 1983 plaintiff must show that a person (or persons) acting under color of state law deprived him of a right conferred by the Constitution or federal law.  See 42 U.S.C. § 1983.  Defendant argues that Plaintiff cannot show that Defendant acted under color of state law.

Defendant is a private lending institution.  In a case involving private parties, a plaintiff may show the requisite state action by establishing that "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).  Determining whether actions are can fairly be attributed to the state requires consideration of two factors:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

Id. Defendant argues that initiating and participating in a mortgage foreclosure proceeding does not make a creditor's

conduct attributable to the state.[17]

While Defendant is correct that a creditor does not become a state actor merely be initiating a mortgage foreclosure action, it is less clear whether obtaining and serving a writ of execution is state action.  In arguing that participation in foreclosure only becomes state action when property is actually seized, Defendant relies on Jordan v. Fox, Rothschild, O'Brien and Frankel, 20 F.3d 1250, 1271 (3d Cir. 1994) and Grillo v. BA Mortgage, LLC, Civ. A. No. 04-2897, 2004 U.S. Dist. LEXIS 20347 (E.D. Pa. Oct. 4, 2004).

In Jordan, the Third Circuit found that the enforcement of a writ of execution on a confessed judgment violated the due process clause because it allowed seizure of property without providing an avenue for the plaintiff to seek a pre-deprivation hearing or obtain prompt post-seizure relief.  Jordan, 20 F.3d at 1271.  The court found that while obtaining a confessed judgment did not make a creditor or its attorneys a state actor, obtaining a writ, and using the sheriff to serve and enforce that writ to

---

[17]Defendant's role in the bankruptcy proceedings cannot transform it into a state actor because, at most, it shows that Defendant "acted together with or gained significant aid from" the federal bankruptcy courts.  Because § 1983 covers only state, not federal, actors, actions in concert with the federal government cannot create the basis for a § 1983 claim.  See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971).  Furthermore, we find no authority supporting that a Bivens claim can lie for a debtor against a creditor by virtue of his participation in that debtor's bankruptcy proceedings.

seize the plaintiff's bank account, made the creditor's and attorneys' conduct attributable to the state.  <u>Id.</u> (citations omitted).

Grillo applied <u>Jordan</u> where a attorneys for a creditor in a mortgage foreclosure proceeding unilaterally, and without court approval or notice, increased the amount of the writ of execution.  <u>Grillo</u>, 2004 U.S. Dist. LEXIS at *13.  <u>Grillo</u> found that, under <u>Jordan</u>, the attorneys became state actors when they "enlist[ed] the compulsive powers of the local [s]heriff" to execute a writ of default judgment to sell a home.  <u>Id.</u> at *18-22.  The court pointed out that the defendants "actually 'caused the Sheriff of Bucks County to sell the Grillos' Home to BA/Nationsbanc . . . .'"  <u>Id.</u> at *20.

Thus, contrary to Defendant's assertions, it appears that it is the enlistment of the sheriff's aid in delivering and executing on a writ that makes a creditor (or his attorney) a state actor.  Because Defendant, assuming it acted in compliance with the relevant rules, employed the services of the local sheriff to serve the writ, Defendant's actions therein are attributable to the state.  Furthermore, Defendant did, ultimately, cause the sheriff to sell Plaintiff's home.  <u>See</u> <u>infra</u> Part III.D.2.c.i.

### c.   Due process violation

We examine whether Plaintiff has raised any genuine issue of

material fact as to whether Defendant's alleged actions, in so far as they used the compulsive power of the local sheriff, violated Plaintiff's due process rights.  Procedural due process under the Fourteenth Amendment requires "notice and an opportunity to be heard before the Government deprives [one] of property."  United States v. James Daniel Good Real Property, 501 U.S. 43, 48 (1993). Defendant argues that there was no deprivation of property, and that Plaintiff had sufficient notice and opportunity to be heard.

### i.    Deprivation of property

Defendant argues that Plaintiff has not objected to the sheriff's sale itself, and, thus, no deprivation of property is before us.  While Defendant may be technically correct, we must construe Plaintiff's pro se claims liberally.  See supra Part II. It appears that Plaintiff previously asked this Court to enjoin the sheriff's sale, and that the ultimate goal of Plaintiff's case is to invalidate the mortgage foreclosure and recover his property.  (See Compl. at 4.)  While inartfully presented, we are satisfied that Plaintiff's Complaint contemplated the loss of his property, and that it would defy logic to conclude that no "deprivation" occurred.

### ii.  Notice and opportunity to be heard

Defendant argues that Plaintiff received ample notice and opportunities to be heard.  The challenged writ was issued

November 5, 2004.  Plaintiff does not claim that he did not have
notice of the writ before the sale, but rather that it was itself
invalid.  It is not entirely clear whether this argument is based
on his belief that the Stipulation was invalid, or on his
allegation that service of the notice of the sheriff's sale
scheduled for December 29, 2004 was defective.  Plaintiff has
presented no facts showing that the praecipe and writ were
invalid on the basis that the Stipulation was defective.
Plaintiff continues to rest on his allegations and legal
conclusions that the Stipulation was unfair, and that he was not
able to pay.  It is clear, however, that the Stipulation, even
before Plaintiff defaulted, granted Defendant relief from the
automatic stay, and thus allowed them to proceed with the
Foreclosure Action.  While we construe Plaintiff's pleadings
liberally, he must still present some competent evidence in
support of his claims to defeat Defendant's motion, and he has
failed to do so.

Even if Plaintiff had raised some material question of fact
as to whether the writ was invalid, he has failed to show that he
did not have notice and the opportunity to be heard with regards
to the validity of the writ, the veracity of the service
affidavit, and the related propriety of proceeding to sheriff's
sale.  To the contrary, Plaintiff filed motions seeking to reopen

the judgment and to stay the sheriff's sale.[18]  (See Pl.'s Mots. for Relief.)  Plaintiff's Motions for Relief asserted the same defects he now presents before this Court.  On February 15, 2005, before any sheriff's sale was conducted, a hearing was held, at which Plaintiff was present and represented by an attorney. Plaintiff admits that he had the opportunity to have his objections and arguments heard, and to present evidence and testimony on his behalf.  The court denied Plaintiff's motions, and allowed the Sheriff's sale to go forward.

In contrast to Grillo, the defects alleged here are not based on the substance of what the creditor claimed was owed, but on procedural defects that, while they may make a writ voidable, do not make it automatically void.  See Pa. R.C.P. 3162(b) (providing that execution of a writ may be stayed by the court upon motion showing a defect in the writ or service).  These alleged procedural defects, in light of Plaintiff's notice and opportunity to be heard prior to the sale, cannot create a genuine issue of material fact as to whether Plaintiff's due process rights were violated.

**E.   § 1985**

Under § 1985, a plaintiff must allege (1) a conspiracy; (2) for the purpose of depriving any person or class of persons of the equal protection of the laws, or of equal privileges and

---

[18]Plaintiff's motions evidence that, at least by the time he filed them, he had notice of the writ and sale.

immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.  United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott, 463 U.S. 825, 828-29, 103 S. Ct. 3352, 77 L. Ed. 2d 1049 (1983).  In addition to these elements, a plaintiff must show that there is some racial or other invidiously discriminatory animus underlying the actions of the alleged conspirators. Id. at 829.

Plaintiff cannot, as discussed above, sustain his due process claim under § 1983 against Defendant.  See supra Part III.D.2.  Where a plaintiff cannot maintain a § 1983 claim for deprivation of rights, he is precluded from proceeding with a § 1985 claim based on the same allegations.

Nanya-Nashut ex rel Hand v. Centex Home Equity Corp., Civ. A. No. 03-3661, 2003 U.S. Dist. LEXIS 25174, *7 (E.D. Pa. December 1, 2003) (quoting Caldeira v. County of Kauai, 866 F.2d 1175, 1182 (9th Cir. 1989)).  Furthermore, Plaintiff has failed to allege any conspiracy or discriminatory motive.  Thus, even if Plaintiff could support a due process claim under § 1983, he has not presented any allegations or facts supporting a conspiracy motivated by illegally discriminatory motives as required by § 1985.

**F.   Inapplicable Statutes**

Some of the statutory citations upon which Plaintiff's Complaint relies are entirely irrelevant to the case at bar.

### 1.   2 U.C.C. § 508

Assuming that Plaintiff's citation to 2 U.C.C. § 508 refers to Article 2, Section 508 of the Uniform Commercial Code, such provision is entirely without application here.  This section is entitled "Cure by Seller of Improper Tender or Delivery; Replacement" and addresses the ability of a seller of goods to cure improperly tender or delivery of such goods to the buyer. See U.C.C. § 2-508; 13 Pa. C.S. § 2508.  Article 2 covers only transactions in moveable goods – not real property.  See 13 Pa. C.S. § 2102.  As this case involves no transaction of goods, this provision can provide no avenue for recovery.[19]

### 2.   2 U.S.C. § 311(3)(B)

Plaintiff provides a citation to 2 U.S.C. § 311(3)(B), but this Court can locate no such provision.  Even if we consider that this citation might have been intended to refer to Article 2, Section 311 of the Uniform Commercial Code, that provision contains no sub-section 3, and would, as discussed above, be inapplicable in any event because Article 2 covers transactions in goods, not real property.

---

[19]We note that we considered that "U.C.C." might be a misprint, and that Plaintiff might have intended to reference 2 U.S.C. § 508, however our research revealed that no such provision exists.

### 3.    Pa. Const. Article III, § 32

Plaintiff asserts that Defendant has violated Article III, § 32 of the Constitution of the Commonwealth of Pennsylvania. This section is entitled "Certain Local and Special Laws" and limits the ability of the state legislature to pass local or special laws in certain circumstances.  None of the listed circumstances relate to Plaintiff's claims, nor does Plaintiff allege any wrongdoing on the part of any legislator.  Thus,

Plaintiff cannot recover based on a theory that Defendant violated Article III, § 32 of the state constitution.

**IV.  Conclusion**

For the reasons articulated above, Defendant's Motion for Summary Judgment is granted in part and denied in part in accordance with the attached order.  Plaintiff's Complaint is dismissed except to the extent it seeks relief pursuant to § 362.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
JOHN P. MATHEWS              :     CIVIL ACTION
                             :
        v.                   :     05-100
                             :
WASHINGTON MUTUAL BANK, FA   :
```

## ORDER

AND NOW, this  14th  day of August, 2006, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 32), and Plaintiff's response thereto (Doc. No. 35), it is hereby ORDERED that Defendant's motion is GRANTED in part and DENIED in part as follows:

    (a)  Defendant's motion is DENIED to the extent it seeks dismissal of Plaintiff's claim pursuant to 11 U.S.C. § 362;

    (b)  Defendant's motion is GRANTED as to all other claims; and

    (c)  Plaintiff's Complaint is DISMISSED except to the extent it seeks recovery pursuant to 11 U.S.C. § 362.

                      BY THE COURT:


                      s/J. Curtis Joyner

                      J. CURTIS JOYNER, J.